[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case came to this court for a trial on a limited contested dissolution. The parties on the record had stipulated to joint custody. That order will follow in this decision. This decision is addressed to the remaining property issues of the parties.
The wife whose maiden name was, Bernice Filakosky and the husband Melvyn Rapoport were married on November 30, 1980, in Redding, Connecticut. The parties have resided in Connecticut for more than one year preceding the date of the complaint. The court finds that the marriage has broken down irretrievably. The husband and wife have one minor child issue of their marriage to wit Max Rapoport, born November 25, 1985. There have been no other minor children born to the plaintiff wife since the date of the marriage. The State of Connecticut has not contributed to the support or maintenance of either the plaintiff, defendant or the minor child.
The wife is age 44 and the husband is age 57. This is a second marriage for both parties. The husband is a physician specializing in gynecology and obstetrics. His license to practice in Connecticut was suspended in November of 1990 and CT Page 10885 he was partially restored in June of 1991. He cannot however practice obstetrics in Connecticut but he might practice gynecology in Connecticut. The practical problem is that both of the insurance companies who issue policies in Connecticut have denied him malpractice coverage.
He is now working in New York performing medical examinations. He is presently paid $8.00 per patient all as shown on his exhibits of invoices introduced into evidence. The most recent is exhibit 13 that shows that he saw 144 patients at $8.00 each for a total fee of $1,152.00 This covered the period November 14th through November 26th. His tax returns for 1990 show that he grossed $52,934.00 as wages and salaries as shown on exhibit D. His tax return for 1989 shows that he grossed from wages and salaries $58,000.00 all as shown on exhibit C. He has not been a large earner even before his problems with the licensing board in Connecticut.
The wife worked for the defendant during the time of their marriage without compensation. She was the office manager of his private practice and abortion clinic. She had, at that time, a college degree in graphic design. The parties are substantially in dispute as to whether he wanted her in the office or not or whether it was her thought, but in any event it is clear from the time of their marriage until his suspension she was the manager and worked without pay.
She enrolled at Sacred Heart University recently to receive her master's degree in education and her teaching certificate. She is presently practiced teaching full time in addition to attending classes. She receives no compensation. By pursuing her studies full time she will be able to be employed as a teacher in September of 1992. If she were to have gone part time, it would take 22 years and she would have had no time with the minor child, which would have been detrimental to him in her opinion at this critical time. There is much dispute as to whether or not she should be back in the graphic design business, or if she should be a teacher, but she has not been in the graphic design business since early in the marriage and indicates she has no desire to return to that area of employment.
The premises that the parties occupied as the marital residence at 66 Cayer Circle, Huntington Connecticut, has been in the wife's name since May of 1986. The wife indicates that it was put in her name because the husband felt the property should belong to the wife and to Max. The premises were sold and the proceeds of the sale were placed in escrow pursuant to a trust agreement which was exhibit B. Those funds are being held subject to the court's order on the net proceeds. The net CT Page 10886 proceeds presently are approximately $41,000.00.
The premises owned by the husband at White Plains Road in Trumbull, Connecticut was placed in the wife's name on August 20, 1985. Apparently the wife did not know about this transfer until 1991. The husband did not discuss this with her.
The wife's health appears to be fine. The husband is a diabetic and is insulin dependent. He has eye, back and neck and hand problems. The husband was admitted to Silver Hills in May of 1990 two or three days after a fetal death. He found himself not to be in control and unable to make a good judgments. He was there for one month.
The parties separated in March of 1991. During the time the parties were separated the husband did not pay any support to the wife until ordered by this court on November 7, 1991 to do so. At that time the husband was ordered to pay to the wife $50.00 a week alimony and $150.00 a week child support. The husband made one of those payments but did not pay three weeks of payments which were in arrears at the time of trial. This is so despite the fact that two weeks before the trial he received approximately $1,200.00 in back rent from a tenant who leased his personal property.
The wife is presently not earning any money. The husband's financial affidavit shows that he is earning $668.00 per week or $2,872.00 per month as income from his medical sources. He also receives $400.00 per month for the rental. He receives weekly disability compensation of approximately $151.00 or $649.00 per month. His monthly income is approximately $3,921.00.
The court finds that it has jurisdiction. The court has listened to the parties and reviewed their evidence and their exhibits. In addition, the court has taken into consideration all the criteria set forth in Conn. Gen. Statutes46b-81, the assignment of property and transfer of title statute, 46b-82 the alimony statute, 46b-62 the attorney's fees statute and 46b-84 the child support statute and all other relevant statutes. In addition the court has reviewed the financial affidavits of the parties and listened to the arguments of counsel along with their claims for relief and other pleadings as are appropriate. Accordingly the court orders as follows:
 1. The marriage is dissolved on the grounds of irretrievable breakdown.
CT Page 10887
 2. No attorney's fees are awarded to either party since neither party has introduced any evidence to show the reasonableness of any attorney's fees claimed and the husband has no present ability to pay any attorney's fees.
 3. As to child support the court rejects the defendant's argument that the VA disability compensation is not included in the guidelines for child support. It is clear under the child support guidelines issued by the Commission for child support guidelines in January of 1991 pursuant to public act 89-203 that on page 10 the discussion is gross income determination and it basically indicates that included in there would be social security payments as well as Veteran's payments, unemployment, worker's compensation, retirement pension and other benefits.
 It is clear that a VA disability compensation is included in the gross income. Therefore, the court has determined that his weekly net income for child support purposes is as set forth on his December 2, 1991 affidavit in the sum of $575.66. Therefore, the court orders weekly child support in the sum of $150.00 per week which meets the guidelines.
 4. As to alimony the court finds that the husband's monthly earnings consists of $2,872.00 of earned income. $649.00 VA disability compensation and $400.00 of a rental income for a total monthly income of $3,921.00. The court orders the husband to pay $150.00 per week alimony.
 5. As to the monies held in the escrow account it is ordered that the wife receive the entire amount held in escrow pursuant to the trust agreement here in before mentioned so that she should be paid $40,829.98 plus the interest due on that account.
 6. As to the White Plains Road property which is presently in her name it is ordered that on the sale of those premises she is to be paid the first $30,000.00 of the sale. Thereafter the proceeds will be divided 40 percent to the wife and 60 percent to the husband.
 7. As to the income tax refund of approximately $2,400.00 that is due the parties shall divide that check equally.
 8. The husband shall maintain medical insurance for the minor child at the husbands expense and that uninsured medical expenses of the child shall be paid fifty percent by wife and fifty percent by the husband.
CT Page 10888
 If the wife, when she becomes employed can obtain insurance at no cost to herself, she shall do so in lieu of the obligation of the defendant.
 9. The husband is ordered to carry term life insurance for the benefit of the minor child as long as the child is under the age of 18. The husband shall obtain said insurance in the sum of $200,000.00 if it is available to him as a benefit of his employment without cost to him. In any event he shall carry life insurance for the benefit of the minor child if he is not employed where such insurance is a benefit, to the extent that $1,500.00 in annual life insurance premiums will provide coverage. By that I mean if $1,500.00 in life insurance premiums for term insurance will buy $50,000.00 of coverage then he is obligated to maintain that insurance. He is to obtain that insurance within 30 days of the date of this decree and advise the wife of that insurance and to name the child irrevocable beneficiary of that policy.
 10. The husband shall transfer ownership of the life insurance policy insuring the son Max to the plaintiff and she shall pay the premiums for the same if she so desires and may designate her choice of beneficiary.
 11. The parties shall each retain the automobile each is presently driving and shall he primarily liable to pay the loan thereon and shall hold the other harmless thereto.(The black car to the wife).
 12. Each party shall hold the other harmless from the liabilities incurred in each of their names, other than the aforesaid automobile loans. Such obligation shall include the defendant indemnifying and holding the wife harmless from the Gateway Bank loans that were incurred by him for his purpose and which are the subject of pending litigation.
 The court has taken judicial notice of the case pending entitled Gateway Bank v. Melvyn Rapoport Et Al 27 80 92. In the addition the husband will hold the wife harmless as to any jointly-owned credit cards.
 13. Except as otherwise provided herein, the parties shall each retain ownership of the assets in the respective names.
 14. The court issues a wage execution. If the husband has not paid the arrears due under the Pendente Lite order by the time the income tax check comes back the arrearages are to be deducted from that payment. If there are any arrearages CT Page 10889 at the time that the White Plains Road property is sold they shall be deducted from that sale. These orders in no way excuse the non-payment by the husband of the court orders. The husband has shown some disregard of court orders in the past by failing to pay the court ordered alimony and child support pendente lite in a timely fashion, when in fact he had money in his hands as back payment on his rent. He also received payments from his employment without deductions for taxes and FICA.
 So that although his net income on this financial affidavit shows deductions in fact they are not being taken out on a payment by payment basis. Therefore his cash flow is better than his financial affidavit indicates.
 15. The husband shall pay for Max's child therapist for the once a week visit to the extent that said visit is not covered by insurance for a period not to exceed 6 months from the date of this decree.
 16. The custody and visitation order incorporates the stipulation of the parties put on the record and set forth on exhibit 10 on file in the court file. The agreement is as set forth and it is ordered to become a order of this court. The agreement and order is as follows:
The parties agree to share joint legal custody of their minor child, Max, providing for joint decision-making authority by the parents. They also agree that Max will continue to reside with his mother and that she will be his primary custodian.
The parents agree to arrangements allowing Max to be with each parent on alternate weekends and alternate major secular holidays. They also agree to work together to insure that Max is with this mother on the Christian holidays of Easter and Christmas and with his father on the Jewish holidays of Hanukkah, Ro, Rosh Hashana, Yom Kippur and Passover. Arrangements of summer periods of access between Max and his father will be made by mutual agreements of the parents.
Additionally, both parents agree to work together to modify arrangements for access between Max and his father in the event that changes in either parent's residence makes said arrangements unworkable.
EDWARD R. KARAZIN, JR., JUDGE.